## SHEPHERD v. DENVER AND RIO GRANDE RAILROAD COMPANY.

No. 2374. Decided September 6, 1912 (126 Pac. 692).

1. MASTER AND SERVANT—JURY QUESTION—"FELLOW SERVANTS"—EXISTENCE OF RELATION. Comp. Laws 1907, section 1343, provides that all employees who, while at work, are in the same grade of service, and are working together at the same time and place and to a common purpose, neither of such persons being intrusted with any superintendence over his fellow employees, are fellow servants. *Held* that, where the facts are undisputed, whether co-employees are fellow servants under the statute is a question of law for the court; but if they are in dispute, or conflicting inferences may be drawn therefrom, the court should construe the several clauses of the statute defining the relation, and charge that if the jury find the facts to be as stated they must find for or against the relation, as the hypothecated facts establish.[1] (Page 473.)

2. MASTER AND SERVANT—"FELLOW SERVANTS"—"WORKING TOGETHER AT THE SAME TIME AND PLACE." Comp. Laws 1907, section 1343, provides that all persons who, while engaged in the service of a common employer, are working together at the same time and place and to a common purpose, etc., without being intrusted with superintendence, are "fellow servants." The court instructed that the term "working together at the same time and place" does not mean that the employees were working at the exact spot and doing exactly the same kind of work, but means whether, in the discharge of their duties, they are thrown in such contact with each other that they may have a fair opportunity of observing the habits and demeanor of each other, so as to form a conclusion as to the carefulness of the habits of the other. *Held*, that the instruction was erroneous, as it

---

[1] Neesley v. Southern Pac. Co., 35 Utah, 264, 99 Pac. 1067; Meyers v. Railroad, 36 Utah, 307, 104 Pac. 736, 21 Ann. Cas. 1229.

was not essential to constitute two employees fellow servants that they should have been thrown in contact for such time as to enable them to observe the habits of each other. (Page 476.)

3. Master and Servant—Fellow Servants—Nature of Common Service. In a railroad employee's action for personal injuries, the court instructed that the term "same grade of service," as used in Comp. Laws 1907, section 1343, defining fellow servants, does not mean whether they earn the same amount of money, or whether they are doing exactly similar work, but means whether they are on the same level, so far as the exercise of an authority over each other is concerned, and also instructed that the term "working to a common purpose," as used therein, meant whether their work may fairly be said to be within some division or department of the employer's business, and directed to some end within such division or department. *Held*, that the definitions given of the statutory terms were incorrect.[2] (Page 477.)

4. Appeal and Error—Prejudicial Error—Instructions. The error in the instructions defining the phrases "same grade of service," "working together at the same time and place," and "working to a common purpose," was prejudicial to plaintiff. (Page 479.)

Appeal from District Court, Third District; *Hon. George G. Armstrong*, Judge.

Action by Joseph G. Shepherd against the Denver and Rio Grande Railroad Company.

Judgment for defendant. Plaintiff appeals.

Reversed and remanded for new trial.

*George B. Hancock* and *E. A. Walton* for appellant.

*Van Cott, Allison & Riter* for respondent.

FRICK, C. J.

This action was brought to recover damages for personal injuries which appellant alleged he suffered, while engaged

---

[2] Meyers v. Railroad, 36 Utah, 324-329, 104 Pac. 736, 21 Ann. Cas. 1229.

in the discharge of his duties as a servant of respondent, through its negligence in operating a certain locomotive engine. Respondent denied that it was guilty of negligence, pleaded contributory negligence, assumed risk, and further insisted at the trial that, under the evidence, the injury to appellant was caused through the negligence of a fellow servant. The court submitted the case to the jury upon the foregoing defenses, and they returned a general verdict in favor of respondent. Judgment was duly entered in conformity with the verdict, which appellant asks us to reverse.

The evidence produced at the trial is not in the record. The court, however, certifies, and both parties concede, that there was sufficient evidence adduced at the trial upon the question of whether the negligence by which the injury to appellant was caused was that of a fellow servant to require the court to submit that question to the jury.

The appellant insists that the court erred in charging the jury upon that question, and that the error thus committed was prejudicial. We have examined into the pleadings to determine whether the instruction complained of might be proper under any possible state of the evidence that would have been proper under the issues. We have been forced to the conclusion that the instruction excepted to and complained of here would not be proper under any possible state of the evidence that might be adduced under the issues, and for that reason, upon appellant's request, we are required to review the charge. The charge is one that the court gave upon respondent's request, and in view of the importance of the question raised we give it in full. It is as follows:

"If you should find that no warning of the approach of the engines was given, yet if you should also find that the failure to give such warning was due to the hostler in charge of the engine, and that he and the plaintiff were in the same grade of service and were working together at the same time and place and to a common purpose, and neither intrusted with any superintendence or control over the other, then I charge you that they were fellow servants, and that the

railway company cannot be held liable for the hostler's conduct. That is what is known in the law as the fellow servant rule. If, for example, you employ two men to paint the roof of your house, giving neither any superintendence or control over the other, and while engaged in such work one is precipitated from the roof and his leg fractured through the negligence of the other, the injured one cannot hold you liable for the negligence of the other. Before this exemption from liability can exist, however, our law requires that the two servants must be engaged in the same grade of service and working together at the same time and place and to a common purpose, and neither intrusted with any superintendence or control over the other. The term 'same grade of service' does not mean whether they earn the same amount of money, or whether they are doing exactly similar work; but it means whether they are on the same level, so far as the exercise of an authority over each other is concerned. The term 'working together at the same time and place' does not mean whether they were working at the exact spot and doing exactly the same kind of work; but it means whether, in the discharge of their duties, they may fairly be said to be thrown in such contact with each other so that they have a fair opportunity of observing the habits and demeanor of each other, and thus are in a position to form a conclusion as to the carefulness or noncarefulness of the habits and conduct of the other. The term 'working to a common purpose' means whether their work may fairly be said to be within some division or department of the defendant's business, and directed to some end within such division or department. Now, in this case, I leave it to you to say whether these conditions exist; and if, within the meaning of these terms as thus defined, you find that plaintiff and the hostler were in the same grade of service, and were working together at the same time and place and to a common purpose, and that neither was intrusted with any superintendence or control over the other, then I charge you that they were fellow servants, and that the defendant is not liable for the hostler's conduct, and your verdict should be for the defendant."

In giving the charge, it no doubt was attempted to construe our statute, which defines under what conditions coemployees are fellow servants. Our statute, after stating who are vice principals, defines fellow servants as follows:

"All persons who are engaged in the service of such employer, and who, while so engaged, are in the same grade of service and are working together at the same time and place and to a common purpose, neither of such persons being intrusted by such employer with any superintendence or control over his fellow employees, are fellow servants with each other; provided, that nothing herein contained shall be so construed as to make the employees of such employer fellow servants with other employees in any other department of such employer. Employees who do not come within the provisions of this section shall not be considered fellow servants." (Comp. Laws 1907, sec. 1343.)

Under this statute, therefore, the question of whether coemployees are fellow servants or not may be a question of law, or it may become a question of mixed law and fact. If the facts are conceded or undisputed, and are such that do not admit of conflicting inferences, the question is one purely of law. When the facts are in dispute, or are such that conflicting inferences may be deduced therefrom, then the question is one of mixed law and fact. When the question is one of law merely, as was the case in *Neesley v. Southern Pac. Co.*, 35 Utah, 264, 99 Pac. 1067, and in *Meyers v. Railroad*, 36 Utah, 307, 104 Pac. 736, 21 Ann. Cas. 1229, then it is the plain duty of the court to direct the jury to find against the relation. If the facts, without dispute, create the relation as defined by the foregoing statute, then the court should direct the jury to so find. The courts are practically unanimous in holding that where the facts are not in dispute, or are conceded, and are not such as admit of conflicting inferences, the court must, as a matter of law, declare that the relation exists, or does not exist, under the facts proven.

Upon the question of what is the proper course to pursue in charging the jury in case the facts are in dispute or admit

of conflicting inferences, the courts seemingly differ. The difference, however, where statutes like our own are in force, is more apparent than real, and in most instances arises through inadvertence or careless statements by the courts, rather than from a desire to lay down different rules of law or procedure. A moment's reflection, we think, makes clear that under statutory provisions like ours it is still the court's duty to declare what facts are necessary to establish the relation. Under our statute the relation is defined by a specific statement; and where such is the case it is always the duty of the court to construe the meaning of a statement or statute. This duty cannot be avoided under any circumstances. The court, therefore, must determine whether, under any given state of facts, the relation of fellow servant exists, or does not exist. The court is not absolved from this duty, merely because the facts may be in dispute. If the trial is to the court, and the facts are in dispute, it must first find the facts and then determine whether or not they establish the relation as defined by the statute. If the facts must be found by the jury, the court, and not the jury, must still determine what facts, when found to exist, are necessary to create the relation under the statute, and must so inform the jury. It must therefore charge them that, in the event they find the facts to be (stating them), then the relation exists, and they must so find. But if they find them not to be as stated by the court, then the relation does not exist, and they must find accordingly. In the second edition of Thompson on Trials (section 1694), the author, after referring to the doctrine of fellow servants as it exists at common law in this country, says:

"In an action by a servant against his master for damages arising from the negligence of a person whose relation to the plaintiff depends upon a state of *facts* which is *not disputed*, the question whether or not such person was a fellow servant of the plaintiff, within the meaning of this rule, is a *question of law* for the court; but if the facts are disputed, the law governing those relations should be declared, upon the alternatives presented by the testimony."

It is conceded by respondent's counsel that to merely charge the jury in the language of the statute is not sufficient and would constitute error. It is contended, however, that this is so because the language of the statute is subject to more than one meaning. But if counsel's statement be granted, it still affords no reason whatever why the court must not inform the jury just what facts are necessary to establish the relation which the statute defines. The mere fact that the language of the statute may be couched in terms to which different meanings may be given is the strongest possible reason why the court should determine the true meaning. Nor can it help the matter any by attempting to aid the jury by telling them that certain terms found in the statute mean thus and so. The court must determine just what the statute means; and, in view that the statute under consideration defines a certain relation, it is the duty of the court to tell the jury just what facts are necessary to establish the relation defined. For example, the statute defines fellow servants to be those who, while working for a common master, "are in the same grade of service and are working together at the same time and place and to a common purpose, neither of such persons being intrusted by such employer with any superintendence or control over his fellow employees, are fellow servants with each other." We are thus given all the elements that are necessary to constitute the relation; and, if any one or more are shown not to exist in a given case, the relation is not established. In the charge in question, an attempt is made to define the meaning of the expression "same grade of service," and after having done so the court permitted the jury to say whether, under the evidence, the servants in question were in the same grade of service or not. If the facts had been without dispute, all agree that it would have been the duty of the court to say whether, under the facts proved, the servants were in the same grade of service or not. This being conceded, how can the court escape that duty by merely saying the facts are in dispute? The facts being in dispute does not and cannot affect the legal question of what facts are necessary to bring

the servants in question within a particular element found in the statute which defines the relation. The court therefore must still tell the jury just what facts must be found to bring the servants within that particular element, and, if found, then that such element is proved, and if found to be otherwise it fails, and the relation is not established. What has been said with respect to the phrase just discussed applies *mutatis mutandis* to all the other terms of the statute which the court undertook to define to the jury.

It may, however, well be doubted whether the definition that the court gave to the phrase "same time and place" is the correct one under our statute. It should be remembered that at common law, as it was declared to be in many of the states of the Union, it was not essential, in order to create the relation of fellow servant, that the servants work together at the same time and place. In other states, where the so-called "departmental rule" was in force, the courts refused to declare that the relation could exist among servants while working in different departments of the master's service, so long as the servants did not come in contact one with the other. In the latter states, therefore, the reasons that are given in the court's charge in question are often found in the opinions of the courts. Under our statute, however, the reasons as given may or may not have application to a particular case. Let us assume that the master has in his employ many servants, two of whom for a year or more have always worked together at the same time and place. Let us assume, also, that one of those servants leaves the employ of the master, and another, a total stranger to the one remaining in the service, is employed to fill the place of the outgoing one. Let us again assume that the stranger and the servant continuing in the employ of the master are working together just as stated above, and on the very first shift, before the two servants have had time to become acquainted, or have had an opportunity to observe each other's conduct in discharging their respective duties, the stranger is injured through the unquestionable negligence of his coservant. Could not the master successfully claim

that, under our statute, the relation of fellow servant existed, regardless of whether the reasons given by the court in the charge existed or not? This merely shows that, while the reasons may apply in some cases, they are not an essential, under our statute, to establish the relation, and are therefore immaterial. So far as this element is concerned, it is established when the servants are working together at the same time and place, regardless of whether they are acquainted with each other or not. Under such circumstances, it is again the duty of the court to say what facts are necessary to establish the elements as part of the relation. If the facts show that in discharging their duties two servants are doing certain things, whatever they may be, it is for the court to say whether in *doing them* the two servants are working together at the same time and place. If the facts are in dispute, then the court should tell the jury that, if they find that the two servants were engaged in doing the things testified to by some witness or witnesses, in doing them they were working together at the same time and place, within the purview of our statute; and hence the court ought to tell the jury that if they so find that element is established. The same principle applies to the phrase "working to a common purpose," and to the phrase "superintendence or control," etc.

Nor are we able to approve the various definitions that the court gives with respect to other terms that are used in the statute. Without now pausing to point out the defects in those definitions, it must suffice to say that the **3** definitions given of the statutory terms aforesaid in the case of *Meyers v. Railroad*, 36 Utah, 324-329, 104 Pac. 736, 21 Ann. Cas. 1229, in our judgment reflect the correct meaning of the statutory terms referred to in the charge. A mere reference to that case will therefore make it plain that the definitions given by the court in this case cannot be sustained, even though the court had pursued the proper course in charging the jury on the question of fellow servants.

Counsel for respondent rely upon two cases which they have cited, in which they contend that the Supreme Courts

of Texas and Arkansas, under statutes like ours, have held
that the court, in giving the charge in question, has pur-
sued the proper course. We have carefully read those cases,
and with all due respect for counsel's statements we have
been unable to arrive at such a conclusion. In the case of
*Gulf, C. & S. F. Ry. Co. v. Warner,* 89 Tex. 475, 35 S. W.
364, the question was this: The Court of Civil Appeals of
Texas was unable to agree whether, under a given state of
facts, the relation of fellow servant had been established un-
der the Texas statute, of which ours apparently is a trans-
cript. The court, under the practice in force in Texas, there-
fore certified up to the Supreme Court of that state the fol-
lowing question: "Was the switch engineer a fellow serv-
ant of the switchman who was injured, under the provisions
of the fellow servant act of 1893?" The Supreme Court
therefore took the evidence as it was certified up and deter-
mined therefrom whether, under the statute, the evidence
certified up created the relation defined by the statute or not.
The question was thus certified up as a question of law, and
it was determined as such. It is true that in determining
the meaning of the statute the Supreme Court of Texas used
some of the same terms and expressions that are given in
the charge in question; but the court did not hold nor inti-
mate that what is said in that regard was proper matter to
incorporate into a charge to a jury. Nor did the court de-
termine or hold that the trial court could escape the respon-
sibility of determining just what facts establish any partic-
ular element which is contained in a statute which defines the
relation, simply because the facts happen to be in dispute. It
goes without saying that the Texas court, like all other courts,
held that where the facts are in dispute, or where different
inferences may be deduced from certain facts, it is for the
jury to say just what facts are established; but that is far
from saying that it is not for the court to say just what
facts are necessary to constitute a certain relation that is
defined by a particular statute.

The other case is entitled *Kansas City, etc., Ry. v. Becker,*
63 Ark. 477, 39 S. W. 358. All that is decided in that case

is that the court erred in charging the jury in the language of the statute upon the question of fellow servants. The reason the court gives in the opinion is that the language of the statute, which is like our own, is susceptible of different meanings. The queston, however, is not whether the reason given by the Arkansas .court is sound or not. It is enough, for the purposes of this decision, that the court did not decide that a charge like the one in question is a proper charge.

The same principle that we are invoking here has, perhaps in different forms, been applied by this and other courts under statutes like the one in question. In *Meyers v. Railroad, supra,* Mr. Justice Straup, in 36 Utah, at pages 324 to 329, 104 Pac. 736, 21 Ann. Cas. 1229, thoroughly considered the question of fellow servants, and when, under our statute, the relation exists. Many cases are cited, some of which are reviewed, and in all of them it is held that certain facts either did or did not establish the relation under statutory provisions like ours.

From what has been said, we do not mean to be understood as holding that it necessarily constitutes prejudicial error, unless the jury, upon the question of fellow servants, is charged strictly in accordance with the views herein expressed. We concede that the court might in a given case, or under certain circumstances, charge the jury in some other form, and yet reversible error result therefrom. In the case at bar, however, as we have pointed out, counsel for respondent concede that if the court had merely charged in the language of the statute it would have been error. If this be the correct view, and we think it is, we cannot see how the court has avoided the error by merely including in the charge the particular definitions it did. Under the charge as given, the jury could still apply the court's definitions, or any other that might be given, strictly in one case and liberally in another, and could thus, under precisely the same state of facts, arrive at a different conclusion with regard to the issue of fellow servants. What construction in this regard they placed upon the definitions in this case we are unable to tell. If, therefore, the court, in each case

informs the jury that the facts testified to, if found by them to be true, did or did not create the relationship of fellow servants, then the incongruous results referred to above will be avoided. If the jury should refuse to follow the court's charge, the matter could be corrected upon a motion for a new trial; and if the trial court erred in disposing of that motion its ruling could, on appeal, be reviewed by this court. We are of the opinion that the charge was erroneous, and prejudicially so.

Appellant also insists that the court erred in the use of certain language in other portions of the charge. We have carefully gone over the whole charge; and when it is considered as a whole, as it must be, appellant has not been prejudiced. While it is true that some portions are argumentative, and that one paragraph is entirely devoted to the question of the moral duty of the jury in deciding between particular parties, all of which might well, and, perhaps, in the form it was given, should have been, omitted, yet there is nothing contained therein that can be declared reversible error.

For the reasons given, the judgment is reversed, and the cause remanded to the district court of Salt Lake County, with directions to grant a new trial and to proceed with the case in accordance with the views herein expressed. Appellant to recover costs.

McCARTY and STRAUP, JJ., concur.