## DIMMICK v. UTAH FUEL COMPANY, *et al.*

No. 2973.   Decided April 16, 1917.   (164 Pac. 872.)

1. APPEAL AND ERROR—REVIEW—MOTION FOR NONSUIT.   A motion for nonsuit not shown by the record cannot be considered on appeal.   (Page 434.)

2. APPEAL AND ERROR—QUESTION FOR JURY.   Where there is a substantial conflict in the testimony, it is the province of the jury and not the trial court or the appellate court to determine the weight of the testimony and find the facts.[1]   (Page 434.)

3. APPEAL AND ERROR—RESERVATION OF GROUNDS FOR REVIEW—EXCEPTIONS.   Where the only exception taken to an instruction was to one portion, the appellate court cannot consider as ground for a reversal complaints of other portions of the instruction urged for the first time in the appellant's brief.   (Page 436.)

4. TRIAL—INSTRUCTIONS.   In a servant's action for injuries, an instruction that "the risks that are assumed by an employee * * * are those that * * * appear to threaten immediate injury to such employee," considered with the whole instruction, which enumerates the circumstances under which an employee is held to have assumed the risk, *held* to tell the jury that the employee also assumes the risk where the dangers are of such a character as to a man in the exercise of average and ordinary care and precaution, situated as was the employee, appear to threaten immediate danger to such employee, and not that before an employee can be said to have assumed the risk the danger must be such as to threaten immediate danger, and the portion complained of was not erroneous.   (Page 436.)

5. TRIAL—INSTRUCTIONS—FOLLOWING LANGUAGE OF STATUTE.   Acts of the court in charging the jury in the language of the statute as to what constitutes vice principals and fellow servants was error.[2]   (Page 438.)

6. APPEAL AND ERROR—REVIEW—PREJUDICIAL ERROR.   As the evidence showed that plaintiff and a person causing the injury were not fellow servants, error in charging in the language of

---

[1] *Hill* v. *So. Pac. Co.*, 23 Utah 94, 63 Pac. 814; *Clark* v. *Ducheneau*, 26 Utah 97, 72 Pac. 331; *Brostrom* v. *Lynch-Cannon Eng. Co.*, 46 Utah 103, 148 Pac. 423.

[2] *Shepherd* v. *D. & R. G. R. Co.*, 41 Utah 469, 126 Pac. 692; *Vota* v. *Ohio Copper Co.*, 42 Utah 129, 129 Pac. 349.

the statute as to what constitutes fellow servants was not preju-
dicial.  (Page 438.)

7. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—EVIDENCE—BURDEN OF
PROOF. When the evidence is conflicting or different inferences
may be drawn therefrom, the burden of establishing contribu-
tory negligence by a preponderance of the evidence is upon the
defendant regardless of whether the evidence in relation thereto
comes from the plaintiff's or the defendant's witnesses.  (Page
438.)

8. TRIAL—INSTRUCTION—BURDEN OF PROOF. An instruction that, if
the jury found that plaintiff was injured by negligence of the
defendant, in order to defeat plaintiff's recovery the burden is
upon such defendant to prove by a preponderance of the evi-
dence that plaintiff was guilty of negligence, proximately con-
tributing to his own injury, or that plaintiff voluntarily as-
sumed any risk of injury, was not so erroneous as to mislead
the jury to believe that in passing on these questions they were
confined to the evidence of the witnesses for defendant alone,
when the court in one instruction told the jury to weigh all the
evidence and consider it together.  (Page 438.)

9. TRIAL—ARGUMENTATIVE INSTRUCTION. A portion of an instruc-
tion that, if the jury find plaintiff was injured, and he had no
knowledge or notice that coal was then upon an extension
chute, and defendants had knowledge of such fact and full op-
portunity to warn the plaintiff of such fact and failed to so
warn him, then the verdict must be in favor of the plaintiff,
was not argumentative as against the defendants.  (Page 441.)

10. TRIAL—INSTRUCTION—UNDUE PROMINENCE. Such instruction did
not give undue prominence to particular facts to defendant's
prejudice.  (Page 441.)

11. TRIAL—INSTRUCTION—CURE. Such statement, when taken with
a portion of same instruction, "should you further find that a
reasonably prudent person situated as were the defendants
under all the surrounding circumstances would have given such
warning, then your verdict must be in favor of plaintiff," rea-
sonably implied that the jury were to find that the defendants
had knowledge that the plaintiff did not know that the coal
was on the extension chute.  (Page 441.)

12. APPEAL AND ERROR—HARMLESS ERROR—INSTRUCTION. It was not
prejudicial error to charge in the language of the pleadings as
to what constituted the issues in the case where the issues were
stated in plain and concise language.  (Page 442.)

13. DAMAGES—INJURY TO SERVANT—INSTRUCTION. An instruction
that, in determining the damages, if any, that the plaintiff is

entitled to, the jury should consider all the evidence, the nature of plaintiff's injuries resulting from the negligent act of the defendants, his suffering in body and mind, and such suffering and loss of health as the jury may believe "plaintiff has sustained, or will sustain," by reason of such injuries, and find such sum as in "the judgment of the jury under all the evidence" will be just, did not leave the right to recover damages for future pain and suffering open to mere conjecture and possibility, but in effect told the jury that such right was limited by the evidence before them, and hence was not prejudicial error to the defendants. (Page 442.)

Appeal from District Court, Seventh District; *Hon. A. H. Christensen, Judge.*

Action by Albert Dimmick against the Utah Fuel Company and another.

Judgment for plaintiff. Defendants separately appeal.

AFFIRMED.

*M. P. Braffet, Ferdinand Ericksen and Van Cott, Allison & Riter* for appellants.

*P. T. Farnsworth, Jr., C. S. Price* and *R. A. Porter* for respondent.

CORFMAN, J.

The plaintiff brought this action to recover damages against the defendants for injuries alleged to have been sustained by him while employed as a stationary engineer at the coal mine of the defendant Utah Fuel Company at Castle Gate, Carbon county, Utah.

Briefly stated, the complaint alleges the corporate existence of the defendant Utah Fuel Company; that the defendant Edwards was its outside foreman; that on the 22d day of July, 1913, and for a long time prior thereto, the defendant corporation maintained and operated at its mine tipple at Castle Gate three shaker chutes for sizing coal; that the coal was first conveyed from the mine to a feed bin in which there was a hopper, from the hopper on to the shaker chutes, first

to chute No. 1, then to No. 2, then to No. 3, the larger lumps of coal finally passing over No. 3 chute; that at all times it was impossible for any coal to pass from the feed bin on to any of the chutes unless the hopper in the bin was caused to move and operate; that no coal could pass to or come upon either chute No. 2 or No. 3 unless No. 1 was operated; that chute No. 3 was operated with a certain stationary engine, known as extension engine No. 3, and chutes 1 and 2, and the hopper, were operated with power from another and larger stationary engine; that plaintiff was employed as engineer for extension engine No. 3; that the defendant Edwards, shortly after plaintiff had come on shift, July 22, 1913, ordered the plaintiff to go to the boiler house, some 300 feet away; and turn steam into the supply pipes for extension engine No. 3 and then return and start up No. 3; that when plaintiff left in obedience to the order no coal was on any of the chutes; that while plaintiff was in the boiler house turning on the steam defendant Edwards caused both stationary engines to be started up, thus operating the hopper and the three shaker chutes, and causing a large amount of coal to be carried on to shaker chute No. 3; that plaintiff found on returning from the boiler house that extension engine No. 3 had already been started, but was working slowly on account of one of its cylinder cocks being open, and, in order to speed up the engine, proceeded to the side of it, stepped on a pillar which was about three feet from the ground in order to reach the cylinder cock and close it, and while in the act of so doing a large lump of coal, owing to the motion, fell from shaker chute No. 3, striking plaintiff on the top of the head, causing him to fall on the railroad track below and sustain the injuries complained of; that plaintiff had had no knowledge or notice of the hopper and chutes having been placed in operation while he was in the power house; that the universal custom in starting the extension engine in chute No. 3 had been not to let any coal pass or come upon it until the cylinder cocks were closed and the engine speeded up to the speed necessary to operate chute No. 3 so it would properly carry the coal that came upon it from chute No. 2; that, when plaintiff went beneath chute No. 3 and assumed the position occupied by

him in closing the cylinder cocks of the engine, the engine was not operating at the speed ordinarily employed before any coal would reach chute No. 3, but was operated only in the usual and customary manner employed preparatory to the passing of coal on to chute No. 3; that defendants were grossly negligent in causing coal to come upon chute No. 3 during the absence and without the knowledge of plaintiff, in failing to give plaintiff notice that coal was there, and in ordering and permitting plaintiff to do what he did do under the said circumstances.

The defendant corporation in its answer denies negligence or carelessness on its part and affirmatively pleads that the injuries complained of were the result of plaintiff's own negligence; that he voluntarily assumed all the risk of injury and that if plaintiff's injury was due to negligence at all it was due to the negligence of a fellow servant. The defendant Edwards in his answer denies negligence on his part and affirmatively pleads negligence on the part of plaintiff.

The trial was to a jury resulting in judgment for plaintiff. Defendants separately appeal.

The physical conditions surrounding the place and scene of the accident and the mode in which the plant was operated, as described in the testimony given at the trial, were substantially as set forth in the complaint, and we shall therefore make no further statement of the facts, nor advert to the testimony of witnesses, except when discussing the controversies arising between the parties on this appeal.

1. Some thirty pages of appellants' brief are devoted to a review of testimony of witnesses and argument in support of their contention that the facts were insufficient to justify the verdict of the jury; that the plaintiff failed to establish his case; and that therefore the trial court erred in denying the defendants' motion for a nonsuit, their motion for a directed verdict, and their motion for a new trial.

We have carefully reviewed the record and fail to find that a motion for nonsuit was made before the trial court, and therefore the same is not to be considered here. Motions for a directed verdict and also for a new trial were **1, 2** made which were denied by the court, as the record

shows. After such review of the record we find a substantial conflict in the testimony, and, in keeping with the repeated rulings of this court, where there is a substantial conflict in the testimony, it becomes the province of the jury, and not the trial court, nor this court on appeal, to determine the weight of the testimony and find the facts. *Hill* v. *So. Pac. Co.*, 23 Utah 94, 63 Pac. 814; *Clark* v. *Ducheneau*, 26 Utah 97, 72 Pac. 331; *Brostrom* v. *Lynch-Cannon Eng. Co.*, 46 Utah 103, 148 Pac. 423.

As stated by counsel for appellants in their brief:

"An important fact to be ascertained at the trial was whether or not the engine and chutes had been operated prior to Dimmick's injury on the morning of July 22, 1913; for, if they had been in operation, then the material allegations of the complaint were not proven, the jury's verdict was against the evidence, and the trial court erred in refusing to set aside the verdict and to grant a new trial."

It is an admitted fact, and the record so shows, that the plaintiff, Dimmick, and his son, Vernial, on the morning of the accident were employed by the defendant corporation as stationary engineers, the former as engineer for extension engine No. 3, operating chute No. 3, the latter as engineer for the large stationary engine operating the hopper and chutes Nos. 1 and 2. Both the plaintiff and his son were therefore in a position to know when and how these engines, and machinery attached, on the morning of the accident, were started and operated, and both testified at the trial. The plaintiff testified in his own behalf that in his employment he was under the direction of the defendant Edwards, foreman for the defendant corporation; that, there being no steam on to operate the engine when he went on shift the morning of the accident, Edwards directed him to go to the boiler house and turn steam into the pipes that supplied the engine; that in obedience to the order of Edwards he went to the boiler house, turned on the steam, and then proceeded to return to his engine; that meanwhile, without his knowledge, the large stationary engine had been placed in operation, and the hopper and chutes Nos. 1 and 2 as well, thus causing a large amount of coal to pass on and clog chute No. 3. Plaintiff's son in his

testimony corroborated the plaintiff as to when the machinery was placed in operation, and also testified that he was directed to start the larger engine operating the hopper and chutes Nos. 1 and 2 by the defendant Edwards. The defendants produced a large number of witnesses who gave testimony of a very positive character contradicting the testimony of the plaintiff's witnesses in this regard, and also tending to show that it was a physical impossibility for the plaintiff to have turned the steam into the supply pipes in the manner testified to by him; that the steam had been turned on by another than the plaintiff; and that the machinery had been in operation for an hour or more before the accident complained of occurred.

Were this court the trier of the facts, we might readily agree with appellants' counsel in their contention that the findings of the jury were wrong on this all-important testimony, but, as pointed out in the decisions of this court above cited, and many others, we must abide by the verdict of the jury in all cases where there is such a substantial conflict in the testimony as the record here discloses.

2.  Appellants contend the court erred in charging the jury, the trial court having instructed the jury as **3, 4** to assumption of risk assumed by an employee in the following language:

"You are instructed that the risks that are assumed by an employee under his contract of employment are those that are naturally and ordinarily incident to, or that naturally and ordinarily arise out of such work as is contemplated by the parties and are known to the employee, or such risks as arise from dangerous conditions created during the course of the service, when such dangerous conditions are known to the employee, or are of such a character as to a man, in the exercise of average and ordinary care and precaution, situated as was the employee, appear to threaten immediate injury to such employee and after such knowledge the employee voluntarily continues in such service. And when such dangerous conditions, so arising during the course of the service are plainly to be seen, and are so obviously dangerous that by the use of ordinary care they would have been seen and their con-

sequence appreciated by a person in the exercise of ordinary and reasonable care, situated as was the employee, then it is presumed from the fact that the employee remains in such service that he has assumed the risks arising from such dangerous conditions. From a careful examination of the evidence in the case you should determine whether or not the injury claimed by the plaintiff was or was not from an assumed risk as herein described. If you conclude that it was the result of such assumed risk, then the plaintiff cannot recover. If you conclude that the injury was not the result of such assumed risk, then defense of assumed risk should be passed by and the rights of the parties to the suit determined under the other issues framed in the case."

The only exception taken at the trial by the appellants to the foregoing instruction was to that portion wherein the court told the jury that "the risks that are assumed by an employee * * * are those that * * * appear to threaten mimediate injury to such employee." Appellants' counsel, in their brief, contend that the instruction was erroneous and prejudicial in other particulars, but we find no exceptions were taken in the court below to such other portions of the instruction now complained of, and therefore this court cannot here for the first time consider them as grounds for reversal. Taking the instruction as a whole, we cannot place the interpretation upon it contended for by appellants' counsel, that the court tells the jury that before an employee can be said to have assumed the risk the danger must be such as to threaten immediate injury. As we view it, the court plainly tells the jury, after enumerating some of the circumstances under which the employee is held to have assumed the risk, that the employee also assumes the risk where the dangers "are of such a character as to a man, in the exercise of average and ordinary care and precaution, situated as was the employee, appear to threaten immediate injury to such employee." In the trial of the case at bar the plaintiff's theory was that the danger plaintiff had been subjected to was of such a character that it threatened immediate injury to him growing out of an extraordinary condition negligently created by the defendants in not operating the plant in the

usual manner, permitting a dangerous condition to arise during his absence in obedience to their orders, and subjecting him to an extraordinary and immediate danger without notice or warning. Assuming that the giving of the instruction complained of by appellants was erroneous under the issues tried, it would seem that to thus tell the jury that, if the plaintiff understood and appreciated the immediate danger to which he claimed to have been subjected, he thereby assumed the risk, then it would necessarily follow that the erroneous instruction could not in any manner be prejudicial to the appellants.

3. It is also contended that the court erred in charging the jury with respect as to whether the plaintiff and the defendant Edwards were fellow servants or not.    **5, 6** The court charged the jury in the language of the statute both as to what constitutes vice principals and fellow servants. To thus charge the jury this court has held, in the case of *Shepherd* v. *D. & R. G. R. Co.,* 41 Utah 469, 126 Pac. 692, and *Vota* v. *Ohio Copper Co.,* 42 Utah 129, 129 Pac. 349 (both cases cited in defendants' brief) was error. It only remains, therefore, for this court to determine whether these errors complained of were prejudicial to the defendants. After carefully reviewing the testimony, we think there is insufficient evidence in the record to support a finding that they were fellow servants. The court might have found as a matter of law, and so charged the jury, that they were not fellow servants, and yet the defendants would have no right to complain when, as here, it clearly appears that the evidence as disclosed by the record is wholly insufficient to establish that relationship.

4. It is next contended by appellants that the court erred in charging the jury as to burden of proof of contributory negligence and assumption of risk, in this, that    **7, 8** the language used by the court was such as to lead the jury to believe that they were not to consider all the evidence in the case, but were to look to the defendants' testimony alone, in passing on these defenses. The court's instruction No. 11, complained of, was as follows:

"If you find from a preponderance of the evidence that

plaintiff was injured by reason of the negligence of the defendant, or either of them, then, in order to defeat plaintiff's right of recovery, the burden is on such defendant or defendants to prove by a preponderance of the evidence that plaintiff was guilty of negligence that proximately contributed to his own injury, or that plaintiff voluntarily assumed the risk of injury from such negligence, if any there was.''

The rule in this jurisdiction as to burden of proof with respect to contributory negligence is stated by Mr. Justice Frick, speaking for this court, in the recent case of *Conway* v. *Salt Lake & O. Ry. Co.*, 47 Utah, 510, 155 Pac. 339, L. R. A. 1916D, 1109, to be thus:

"The true rule in this jurisdiction is that when the evidence is conflicting, or when different inferences may be drawn therefrom, the burden of establishing contributory negligence is upon the defendant, regardless of whether the evidence with regard thereto comes from the plaintiff's or the defendant's witnesses, and in either event contributory negligence must be established by a preponderance of the evidence given upon that subject."

Undoubtedly the court's instruction No. 11 could have been made more explicit by adding some qualifying statement to the effect that the jury should, in passing on the questions of contributory negligence and assumption of risk, take into consideration all the evidence in the case, whether adduced by plaintiff's or defendant's witnesses. However, we are not prepared to say that the court's instruction as given was so erroneous as to have misled the jury into believing that in passing on these questions they were to be confined to the evidence of the witnesses for defendants alone. The court, in its instruction No. 12, immediately following, told the jury:-

''If you find from a preponderance of the evidence that plaintiff was guilty of negligence that proximately contributed to his own injury, then your verdict should be in favor of the defendants, even though you should find from a preponderance of the evidence that the defendants, or either of them, were also guilty of negligence proximately causing plaintiff's injury.''

Then again the court told the jury by its instruction No. 19:

"From a careful examination of the evidence in the case you should determine whether or not the injury claimed by the plaintiff was or was not from an assumed risk as herein described."

Again, in instruction No. 26 the jury are told to weigh all the evidence carefully and consider it together. And so it is found throughout the instructions as a whole that the court nowhere told the jury that they were to be confined to the testimony of the witnesses of either party alone in passing upon the questions submitted to them. While there is some authority to support the contentions of defendants that the trial court committed error in failing to expressly charge the jury that in passing upon the question of plaintiff's contributory negligence and assumption of risk they should consider not only the evidence of defendant's witnesses, but that of the plaintiff's witnesses as well, we think the great weight of authority and the best-reasoned cases hold, if it can be reasonably implied from the court's instructions as a whole that the evidence of both plaintiff's and defendant's witnesses is to be considered, the court's instructions will not be held erroneous. Defendants' contention here must fail. *Terre Haute, etc., Co.* v. *Young,* 56 Ind. App. 25, 104 N. E. 780; *Prior* v. *Eggert,* 39 Wash. 481, 81 Pac. 929; *Wistrom* v. *Redlick,* 6 Cal. App. 671, 92 Pac. 1048.

5. Defendants contend that the court erred in giving instruction No. 14 as follows:

"If you find by a preponderance of the evidence in this case that at the time the plaintiff was injured he had no knowledge or notice, either actual or constructive, that is, by the exercise of ordinary care he could not have known of the fact that coal was then upon the extension chute, and that the defendants had knowledge of such fact, and, with full opportunity to warn plaintiff of such fact, failed and neglected to so warn him, and should you further find that a reasonably prudent person situated as were the defendants in this case under all of the surrounding circumstances disclosed by the evidence would have given such warning, then your

verdict must be in favor of the plaintiff, unless you further
find that plaintiff assumed the risk, or was himself guilty of
contributory negligence, or that he met with the injuries by
him complained of as the result of the negligence of a fellow
servant or fellow servants of plaintiff.''

An exception was taken to the instruction by defendants
as follows:

''And defendants separately except to that portion of
paragraph 14 wherein the court tells the jury that, if they find
'plaintiff was injured and he had no knowledge or notice, that
coal was then upon the extension chute, and that the defend-
ants  had knowledge of such fact, and with the full opportunity
to warn plaintiff of such fact and failed and neglected to
so warn him, then their verdict must be in favor of the
plaintiff.' ''

Defendants here contend that this instruction as given by
the court was erroneous in three particulars: (1) That it
was argumentative; (2) that it singled out and gave
undue prominence to particular facts, and (3) that 9, 10, 11
it did not put before the jury all the facts to be taken
into consideration by them.  We do not think the instruc-
tion is argumentative, certainly not so as to be prejudicial to
the defendants, but rather, if at all, as against the plaintiff,
by charging that certain facts must be established before the
plaintiff can recover.  And the same is quite true if it can
be successfully contended that undue prominence is given to
certain facts.  Defendants are very insistent that the jury
should have been told by the court that before they could
find for the plaintiff it should appear ''that defendants knew
or ought to have known that the plaintiff was himself ignor-
ant of the fact that coal was upon the extension chute.''
True, the court might well have been more explicit, yet it
is to be seen that when the court told the jury that, ''should
you further find that a reasonably prudent person, situated
as were the defendants in this case, under all the surround-
ing circumstances disclosed by the evidence, would have given
such warning, then your verdict must be in favor of the plain-
tiff,'' the language thus used by the court, we think, reason-
ably implied that they were to find the defendants had knowl-

edge that the plaintiff did not know the fact that coal was on the extension chute, and had the court not even so impliedly charged it as a matter of law it would not have been error.

6.   The court by its instruction No. 1 in substance charged the jury in the language of the complaint and answer, and then, by instruction No. 4, instructed the jury as follows:

"In order to recover in this action the burden is on the plaintiff to prove by a preponderance of the evidence that he was injured by reason of the negligence of one or both of the defendants, and that such negligence consisted of one or more of the acts or omissions alleged in the complaint as negligence."

No exception was taken by defendants to the former.   To the latter defendants duly excepted, and now complain and assign error by reason of the court having in- **12, 13** structed in the language of the pleadings.   Assuming that defendants could be permitted to broaden their exception as taken to No. 4 so as to now rightfully claim that it extended to No. 1, we do not think that they were at all prejudiced by the court's having told the jury in the language of the pleadings as to what constituted the issues in this case so long as the issues were, as here, stated in plain and concise language.

7.   It is also claimed by defendants that the court erred in instructing the jury as to measure of damages.   The court by its instruction No. 23 told the jury:

"In determining the amount of damages, if any, that the plaintiff is entitled to in this case, the jury should take into consideration all of the facts and circumstances before them in evidence, the nature and extent of plaintiff's physical injuries, if any is shown by the evidence to have resulted from the negligent act, or acts, of the defendants, or either of them, his suffering in body and mind, if any, resulting from such injuries, and also such suffering and loss of health, if any, as the jury may believe from all the evidence before them the plaintiff has sustained, or will sustain, by reason of such injuries, his loss of time and service and inability to work and earn money for himself, resulting from such

injuries, and should find for him such sum as in the judgment of the jury under all the evidence will be just."

The defendants excepted to that portion of the instruction as given "wherein the court tells the jury that in awarding damages they may allow the plaintiff for 'such suffering and loss of health' as they believe he 'will sustain by reason of such injuries.' " We think the court's instruction properly limited the jury to the evidence before them in awarding to the plaintiff such damages as he would be entitled to if they found the issues in plaintiff's favor. Many decisions are cited in defendants' brief wherein the language employed by the trial court was such as to erroneously leave the right to recover damages for future pain and suffering open to mere conjecture and possibility, but here the court in effect told the jury by the language used that must be limited by, and not go beyond, what the evidence before them, not reasonably but actually, established. To so instruct the jury was not error prejudicial to the defendants.

We have carefully reviewed the defendants' further assignments of error that the trial court erred in refusing certain requests made by defendants for instructions to the jury, and also the rulings of the court in the admission and exclusion of certain testimony, and none seem vital or such as to change our final conclusion that no prejudicial error was committed in the trial of this case in the court below. Therefore no good purpose is to be subserved in reviewing here in detail those assignments.

The judgment of the district court is affirmed; respondent to recover costs.

FRICK, C. J., and McCARTY, J., concur.